1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HARP, | Case No.  1:14-cv-00349-SAB |
| Plaintiff, | ORDER GRANTING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER PROCEEDINGS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 18, 21) |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff John Harp ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits and supplemental security income pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from alcohol abuse in remission, bilateral carpal tunnel syndrome, sleep apnea, mild cervical and lumbar degenerative disc disease, borderline intellectual functioning, learning disability, and anxiety disorder.  For the reasons set forth below, Plaintiff's Social Security appeal shall be granted in part.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 8, 10.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

After receiving an unfavorable decision on his prior claim for disability benefits on January 25, 2010 (AR 63-74), Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on April 9, 2010.  (AR 227.)  Plaintiff's applications were initially denied on December 31, 2010, and denied upon reconsideration on May 16, 2011.  (AR 129-132; 138-142.)  Plaintiff requested and received a hearing before Administrative Law Judge Michael J. Haubner ("the ALJ").  Plaintiff appeared for a hearing on May 24, 2012.  (AR 34-62.)  On June 15, 2012, the ALJ found that Plaintiff was not disabled.  (AR 13-28.)  The Appeals Council denied Plaintiff's request for review on January 17, 2014.  (AR 1-4.)

### A.      Hearing Testimony

Plaintiff testified at the May 24, 2012 hearing and was represented by counsel.  (AR 39-54.)  Plaintiff graduated from high school.  (AR 53.)  Plaintiff last drank alcohol in April 2009 and has been convicted of a DUI with vehicular manslaughter.  (AR 42.)

Plaintiff lives with his father and sister.  (AR 45.)  He has a driver's license and drives three times per week.  (AR 45-46.)  Plaintiff watches television for an hour a day every three days and gets on the computer for about ten minutes once every three days.  (AR 43, 49.)  He reads his mail once a week (AR 43); talks on the phone to family for about ten minutes every day (AR 49, 50); goes out to eat about once a month and leaves the house daily (AR 50).

Plaintiff is able to do all his personal care himself.  (AR 43-44.)  He prepares a simple meal daily, does dishes three times per week, and cleans the kitchen once a week.  (AR 44, 47.)  Plaintiff takes out the trash and mows the lawn once a week.  (AR 44-45.)  It has been three months since Plaintiff changed the sheets on his bed.  (AR 46.)  Plaintiff is able to fold and hang laundry and does laundry every two weeks.  (AR 46.)  Plaintiff vacuums once a week.  (AR 47.)  Plaintiff has a dog and gives it food and water every three days.  (AR 47.)  Plaintiff goes shopping for groceries twice per month and goes to a non-grocery store twice per month.  (AR 48.)  Plaintiff is compliant with his treatment and medications.  (AR 58.)

1    When Plaintiff previously worked as a security office he lifted between 50 and 75

2    pounds.  (AR 52.)  As a security officer, Plaintiff did crowd control and surveillance.  (AR 54.)

3    Plaintiff is able to lift and carry eight pounds, can stand twenty minutes, and walk thirty

4    minutes before resting.   (AR 40.)   Plaintiff can sit thirty minutes at a time and can only

5    concentrate for two minutes.  (AR 40.)  During an eight hour day, Plaintiff needs to rest one hour

6    and twenty minutes.  (AR 41.)  Plaintiff is only rarely able to bend and needs to sit in a chair to

7    put his socks and shoes on.  (AR 41-42.)

8    A vocational expert ("VE"), Thomas Dachelet, also testified at the hearing.  (AR 51-61.)

9    The VE classified Plaintiff's past work history as a security officer, light, SVP 3, semiskilled, but

10   heavy as performed.  (AR 53.)  The ALJ presented a hypothetical of an individual of Plaintiff's

11   same age, education, language, and experience who is able to occasionally lift twenty pounds,

12   frequently lift ten pounds; sit, stand, and walk six hours in an eight hour day; can occasionally

13   stoop, crouch, kneel, and crawl; and is able to carry out simple, routine, repetitive tasks.  (AR 54-

14   55.)   The VE opined that this individual would not be able to perform Plaintiff's past relevant

15   work.   (AR 55.)   However, this individual would be able to work as a packing line worker,

16   Dictionary of Occupational Titles ("DOT") 753.687-038, unskilled, SVP 2, with 43,902 jobs in

17   California and 319,204 in the national economy; garment sorter, DOT 222.687-014, unskilled,

18   SVP 2, with 20,897 jobs in California and 223,146 in the national economy; and ampoule filler,

19   DOT 559.685-01, unskilled, SVP 2, with 20,295 jobs in California and 166,016 in the national

20   economy.  (AR 55.)

21   The ALJ presented a second hypothetical of an individual who can lift and carry twenty

22   pounds occasionally and ten pounds frequently; stand and walk about six hours out of an eight

23   hour day; sit six hours out of an eight hour day; ability to push and pull is unlimited; can

24   occasionally climb ladders, ropes and scaffolds; all other posturals at frequent with no additional

25   limitations.  (AR 56.)  The VE opined that this individual would be able to perform Plaintiff's

26   past relevant work as per the DOT, but not as performed.  (AR 56.)  This individual would also

27   be able to perform those jobs identified in the first hypothetical.  (AR 56.)

28   The ALJ presented a third hypothetical of an individual who is able to manage his own

1  funds; has the ability to perform simple, repetitive tasks; cannot perform detailed or complex

2  tasks; cannot accept instructions from supervisors, interact with the public or co-workers; cannot

3  perform work on a persistent basis; cannot maintain regular attendance in the workplace; cannot

4  complete a normal workweek or workday; and cannot deal with normal stresses in the

5  workplace.  (AR 56-57.)  The ALJ assumed and the VE confirmed that there would be no work

6  available for this individual.  (AR 57.)

7      The ALJ presented a fourth hypothetical of an individual with severe social functioning

8  impairment, marked impairment and attention in concentration; two episodes of emotional

9  deterioration; capable of handling his own funds; and marked impairment of persistence and

10  pace.  (AR 57.)  The ALJ assumed and the VE confirmed that there would be no work that this

11  individual could perform.  (AR 57.)

12      The ALJ presented a fifth hypothetical of an individual who was able to lift and carry

13  eight pounds; stand twenty minutes at a time, walk thirty minutes at a time; sit thirty minutes at a

14  time; concentrate two minutes at a time; needs to raise his feet or lay down for an hour and

15  twenty minutes out of eight hours; and can rarely bend.  (AR 57.)  The VE opined that there

16  would be no work that this individual could perform.  (AR 58.)

17      **B.      ALJ Findings**

18      Plaintiff had previously filed for benefits and a hearing decision dated January 25, 2010

19  found that he had the residual capacity to perform light work with simple repetitive tasks and

20  was not disabled.  (AR 18.)  The period at issue here begins January 26, 2010.  (AR 18.)  The

21  ALJ found that Plaintiff met the insured status requirements of the Social Security Act through

22  December 31, 2012.  (AR 20.)  Plaintiff had not engaged in substantial gainful activity since the

23  alleged onset date of December 1, 2008.  (AR 20.)

24      Plaintiff has the following severe impairments: mild cervical and lumbar degenerative

25  disc disease, borderline intellectual functioning, learning disability, and anxiety disorder.  (AR

26  20.)  Plaintiff has the residual functional capacity to lift and carry 20 pounds occasionally and 10

27  pounds frequently; sit, stand, and or walk for six hours in an 8 hour day; and occasionally stoop,

28  crouch, and crawl.  (AR 22.)  Plaintiff is limited to simple repetitive tasks.  (AR 22.)

1  Plaintiff is unable to perform any past relevant work.  (AR 26.)  Plaintiff was thirty years

2  old and therefore is defined as a younger individual on the alleged disability onset date.  (AR

3  27.)  Plaintiff has at least a high school education and is able to communicate in English.  (AR

4  27.)  Considering Plaintiff's age, education, work experience, and residual functional capacity,

5  there are jobs that exist in the significant numbers in the national economy that Plaintiff can

6  perform.  (AR 27.)  Plaintiff has not been under a period of disability, as defined in the Social

7  Security Act, from December 1, 2008 though the date of the decision.  (AR 28.)

8  **III.**

9  **LEGAL STANDARD**

10  Congress has provided that an individual may obtain judicial review of any final decision

11  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

12  In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

13  Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

14  disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

15  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a

16  scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

17  (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,

18  considering the record as a whole, a reasonable person might accept as adequate to support a

19  conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

20  Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

21  "[A] reviewing court must consider the entire record as a whole and may not affirm

22  simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

23  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

24  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

25  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

26  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

27  upheld.").

28  ///

# IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ's assessment of Plaintiff's mental impairments is fatally flawed; Plaintiff's mental retardation meets Listing 12.05C; the reasons the ALJ provided for rejecting Dr. Tirunagaru's opinion of Plaintiff's physical limitations were legally inadequate; the ALJ did not properly consider Plaintiff's testimony; the reasons the ALJ gave for rejecting the statement of Plaintiff's sister were not legally sound; and this case should be remanded for benefits.   Defendant counters the ALJ did not err and that Plaintiff did not overcome the presumption of nondisability that arose based on the prior denial of benefits.

### A.      Presumption of Continued Ability to Work

Plaintiff's prior application for benefits was denied on January 25, 2010.  (AR 63-74.) Plaintiff did not appeal this decision so it is final and binding.  20 C.F.R. ¶ 404.905; Chavez v. Bowen, 8444 F.2d 691, 692 (1988).   The doctrine of res judicata applies in administrative proceedings, although it is less rigidly applied to administrative proceedings.  Chavez, 844 F.2d at 693.

The Ninth Circuit has held that a finding that the claimant is not disabled creates a presumption that the claimant continues to be able to work after that date.  Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995).  The prior finding that the claimant was not disabled cannot be re-litigated through date of the prior decision.  Giancola v. Colvin, 31 F.Supp.3d 1215, 1220-21 (E.D. Wash. 2014).  "[I]n order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, [a claimant] must prove 'changed circumstances' indicating a greater disability."  Chavez, 844 F.2d at 693 (quoting Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir.1985)).  This can be done by showing a worsening of symptoms or other changes such as the existence of a new impairment not considered in the previous application or a change in the claimant's age category.  Lester, 81 F.3d at 827.  The burden of proof is on the claimant to show that he is disabled and on a subsequent application for benefits the claimant has the burden of rebutting the presumption of continuing nondisability. Lyle v. Secretary of Health and Human Services, 700 F.2d 566, 568 (9th Cir. 1983).

1    The presumption that Plaintiff is not disabled arises in this action.   Therefore, in

2  adjudicating a subsequent claim, the ALJ applies the presumption of continuing nondisability

3  and will determine that the claimant is not disabled unless the claimant rebuts the presumption

4  by showing changed circumstances with respect to the unadjudicated period.   Acquiescence

5  Ruling 97-4(9), 1997 WL 742758 (1997).   If the presumption is rebutted, the ALJ must give

6  effect to certain findings made in the prior final decision by the ALJ.   Id.

7    In the prior decision, the ALJ found that Plaintiff's severe impairments were mild

8  degenerative disk disease of the cervical and lumbar spine; borderline intellectual

9  functioning/learning disorder; and an anxiety disorder.   (AR 68.)   The relevant period for the

10  current application for benefits is from January 26, 2010 through the date of the decision, June

11  15, 2012.  (AR 19.)

12    **B.**    **The ALJ Erred by Failing to State Reasons for the Finding that there was No
     Change in Plaintiff's Mental Condition**

13  
14    Plaintiff argues that the ALJ erred at Step Two by failing to consider Plaintiff's psychosis

15  in determining his severe impairments.   Defendant counters that the ALJ properly evaluated

16  Plaintiff's mental impairments in light of the presumption of continued nondisability, and that

17  Plaintiff has not identified any medical evidence demonstrating that his psychotic disorder has

18  worsened since January 25, 2011.[2]   Defendant further contends that the ALJ properly considered

19  the medical record and that treatment notes demonstrate that Plaintiff's mental impairments have

20  steadily and consistently improved over the relevant time period.

21    "An impairment or combination of impairments can be found 'not severe' only if the

22  evidence establishes a slight abnormality that has 'no more than a minimal effect on an

23  individual['s] ability to work.' "   Smolen, 80 F.3d at 1290 (citations omitted).   Step two is a "de

24  minimis screening device to dispose of groundless claims."   Smolen, 80 F.3d at 1290.   An ALJ

25  can only find that claimant's impairments or combination of impairments are not severe when his

26  conclusion is clearly established by medical evidence.   Webb v. Barnhart, 433 F.3d 683, 687 (9th

27  Cir. 2005) (quoting S.S.R. 85-28).

28  [2] The Court assumes this is a typographical error since the relevant period here begins on January 25, 2010.

1    While Plaintiff alleges that it was error for the ALJ to fail to discuss Plaintiff's psychosis

2  at Step Two, any such error would be harmless if the ALJ considered the limitations posed by

3  Plaintiff's psychosis.  Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

4    Plaintiff argues that the failure to address Plaintiff's psychosis at Step Two was fatal

5  error, however this impairment was present in the medical record during the consideration of the

6  prior application for benefits.  During a visit on March 11, 2008, Dr. McGee notes that Plaintiff

7  has hypersensitivity to perceived criticism, for example he thinks people find him slow when he

8  plays cards, but there is no overt psychosis.  (AR 557.)  By February 19, 2009, Dr. McGee

9  records that she is struck by Plaintiff's odd affect, pervasive low level paranoia and questions

10  whether this is schizotypal.[3]  (AR 553.)  She notes that she would like to try an antipsychotic

11  medication one more time, but Plaintiff refuses to consider it.  (AR 553.)  On April 3, 2009,

12  Plaintiff presented to the emergency room reporting suicidal thoughts.  (AR 409.)  The record

13  also records that Plaintiff was complaining of visual hallucinations.  (AR 409.)

14    On May 6, 2009, Dr. McGee noted that Plaintiff stated he had heard the voice of his

15  father on several occasions when his father was not home.  (AR 551.)  She again noted "?

16  schizotypal."  (AR 550.)  On September 8, 2009, Dr. McGee notes that Plaintiff has possible

17  auditory hallucinations and the working diagnosis is changed to psychosis NOS.  (AR 550, 522.)

18  On November 20, 2009, Dr. Vea records that Plaintiff sometimes has hallucinations.  (AR 549.)

19  On December 17, 2009, Plaintiff met with mental health and reported that he hears male voices

20  that come from outside of his head.  (AR 535.)  The voices started two years prior and he does

21  not understand what they are saying.  (AR 535.)  On January 15, 2010, Plaintiff reported that the

22  Ability seems to be helping because the voices are going away.  (AR 546.)

23    In Plaintiff's prior application for benefits, the ALJ issued a decision on January 25, 2010

24  in which he did not specifically address Plaintiff's diagnosis of psychosis.  To the extent that

25  Plaintiff is attempting to challenge the finding that Plaintiff's psychosis was disabling at this

26  time, he did not appeal the decision and that prior determination is not at issue in this action.

27  _____
[3] Schizotypal is "characterized by exhibiting, or being patterns of thought, perception, communication, and behavior
suggestive of schizophrenia but not of sufficient severity to warrant a diagnosis of schizophrenia."  Merriam-
28  Webster Dictionary, http://www.merriam-webster.com/medical/schizotypal (last visited March 11, 2015).

1    While the presence of additional impairments rebuts the presumption of nondisability,

2  Chavez, 844 F.2d at 694, Plaintiff's psychosis was present prior to the January 25, 2010 decision.

3  This is not a new condition indicating a greater disability that would rebut the presumption of

4  nondisability in this instance.  However, although the ALJ determined that there had been no

5  mental changes in Plaintiff's condition and that Chavez applies, he did not provide any reasons

6  for that determination.

7    Defendant cites to portions of Plaintiff's mental health records that show that Plaintiff's

8  mental impairments have steadily and consistently improved over the relevant time period.

9  These reasons were not articulated by the ALJ in his decision.  While the Court may draw

10  reasonable inferences from the ALJ's opinion, Magallanes v. Bowen, 881 F.2d 747, 775 (9th Cir.

11  1989), it cannot consider Defendant's post hac rationalizations.  "A reviewing court can evaluate

12  an agency's decision only on the grounds articulated by the agency."  Ceguerra v. Sec'y of Health

13  & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).

14    The decision issued by the ALJ here does not provide any reasons for the finding that

15  Plaintiff's mental condition has not changed.  For that reason, the Court finds that the ALJ did

16  not provide reasons supported by substantial evidence in the record for determining that

17  Plaintiff's mental condition has not changed.

18    **C.    The ALJ Erred By Failing to Address the Opinion of Plaintiff's
         Treating Physician**

19

20    Plaintiff also argues that the ALJ erred by failing to address the opinion of Dr. Waugh,

21  Plaintiff's treating physician.  Defendant argues that the ALJ did not err by failing to address the

22  opinion of Dr. Waugh because it does not show that Plaintiff's condition deteriorated.

23    While Defendant argues that Dr. Waugh's opinion and treatment notes confirm that

24  Plaintiff's mental condition had not deteriorated since the January 25, 2010 opinion, the ALJ did

25  not make this finding and it is not this Court's place to conduct a de novo review of the medical

26  record.  Upon remand, the ALJ shall consider the opinions and treatment notes of Plaintiff's

27  treating mental health providers to determine if Plaintiff's mental health condition has changed

28  since the January 25, 2010 finding of nondisability.

D.      **The ALJ's Evaluation of the Medical Evidence**

Plaintiff contends that the ALJ did not give legally adequate reasons for rejecting the opinions of the examining psychologists and Dr. Tirunaguru.  Defendant counters that the ALJ properly weighed the opinions.

1.      Dr. Kuberski

Plaintiff was examined by Dr. Kuberski on September 17, 2010.  (AR 505-509.)  The ALJ considered that in his September 2010 opinion Dr. Kuberski diagnosed major depressive disorder moderate and recurrent, alcohol abuse (in reported remission), and borderline intellectual functioning with a global assessment functioning of 52.  (AR 23, 508.)  Plaintiff told Dr. Kuberski that he cooked, cleaned, and moved the lawn.  (AR 24, 506.)  He was depressed every day, was frequently angry, anxious, had sleep apnea, and frequent thoughts of suicide by overdosing, with his last overdose in April 2009.  (AR 24, 505.)  He heard voices every day that sounded like music.  (AR 24, 505.)  Dr. Kuberski noted that Plaintiff was somewhat distracted and unfocused, but generally able to answer questions.  (AR 24, 506.)  The ALJ stated that Dr. Kuberski opined that Plaintiff could perform simple repetitive tasks, but could not perform detailed and complex tasks; accept instructions from supervisors, interact with co-workers or the public.  (AR 26, 508.)

In his report, Dr. Kuberski noted that Plaintiff's chief complaints were schizophrenia and depression.  (AR 505.)  He reported his depression as a 7 or 8 out of 10.  (AR 505.)  He also stated that he feels the presence of another person in the room and sometimes feels as if he is being touched by that person.  (AR 505.)  Plaintiff stated that his psychological problems create large difficulties for him being able to work because people judge, ridicule and criticize him which makes him angry and impairs his social functioning.  (AR 505.)

Dr. Kuberski found that Plaintiff was somewhat distracted and unfocused, but was generally able to answer questions on point without prompts.  (AR 506.)  He was neat and clean and casually dressed for the examination.  (AR 506.)  He made good eye contact and was cooperative throughout the interview.  (AR 506.)  Plaintiff was somewhat unfocused, but there was no agitation or psychomotor retardation.  (AR 506.)

1       Plaintiff spoke in a soft manner with simple sentences, but his thinking was rational, liner

2 and well organized.  (AR 506.)  There was no indication of a psychotic thought disorder.  (AR

3 506.)  His intelligence appeared to be in the borderline mentally retarded range.  (AR 506.)

4       Plaintiff endorsed constant auditory and visual hallucinations, but did not seem internally

5 preoccupied or confused.  (AR 507.)  Plaintiff stated that he was depressed, frequently angry and

6 anxious.  (AR 507.)  Plaintiff was oriented to time, date, month, year, city, person, and place.

7 (AR 507.)  He could remember four digits forward and four digits backwards.  (AR 507.)  He

8 could remember three of three objects after five minutes.  (AR 507.)  Plaintiff remembered his

9 date of birth, phone number and address.  (AR 507.)  Plaintiff could identify the president,

10 governor, and location of the state capital.  (AR 507.)  He was unable to add 11 + 15 or multiply

11 7 x 5.  (AR 507.)

12       Plaintiff could perform a simple three step command.  (AR 507.)  Abstract thinking,

13 similarities/difference, and judgment/insight were unremarkable.  (AR 507.)  Dr. Kuberski

14 diagnosed Plaintiff with major depressive disorder, recurrent, moderate; alcohol abuse in

15 reported remission; borderline intellectual functioning; sleep apnea; scoliosis; spinal

16 degeneration; inadequate support; occupational problems; and a GAF of 52.  (AR 508.)  Dr.

17 Kuberski did not diagnose any schizophrenia or psychotic disorder.  (AR 508.)

18       Dr. Kuberski opined that Plaintiff could perform simple, repetitive tasks; had moderate

19 impairment with performing detailed and complex tasks; could not accept instructions from

20 supervisors; had moderate impairment in interacting with co-workers and the public.  (AR 508.)

21 Plaintiff had moderate impairment in performing work activities on a consistent basis without

22 special or additional instruction, moderate impairment in completing a normal

23 workday/workweek without interruptions from a psychiatric condition; and moderate impairment

24 in his ability to deal with stress encountered in the workplace.  (AR 508.)  Plaintiff's moderate

25 impairment was due to poor intellectual functioning, poor social skills, and depression.  (AR

26 508.)  Plaintiff would not be able to maintain regular attendance in the workplace.  (AR 508.)

27       While the ALJ found that Dr. Kuberski opined that Plaintiff could perform work

28 activities on a consistent basis without special or additional instruction, maintain regular

1    attendance in the workplace, complete a normal workday/workweek, or deal with usual stress

2    encountered in the workplace, this is not consistent with Dr. Kuberski's findings.  It is unclear if

3    this is a typographically error by the ALJ, since he ultimately gave little weight to the opinion.

4    However, Dr. Kuberski found that Plaintiff was not able to perform work activities on a

5    consistent basis without special or additional instruction, maintain regular attendance in the

6    workplace, complete a normal workday/workweek, or deal with usual stress encountered in the

7    workplace.  (AR 508.)  Therefore, the ALJ erred by incorrectly setting forth the opinion of Dr.

8    Kuberski in the decision.

9          2.    Dr. Morgan

10         The ALJ also considered the opinion of Dr. Morgan that Plaintiff met 12.03 without

11    enumerating any basis for the finding, had marked restrictions of activities of daily living, and

12    marked difficulties in maintaining social functioning, and maintaining concentration, persistence,

13    and pace.  (AR 25, 610, 612-614.)  Dr. Morgan found that Plaintiff had a severely depressed

14    mood with a flat, fixed, and unchanged affect, but no evidence of delusions, thought blocking,

15    ideas of reference, obsessions, phobias, compulsions, or depersonalization.  (AR 25, 608.)  Dr.

16    Morgan diagnosed psychotic disorder (not otherwise specified) and borderline intellectual

17    functioning by history and rated Plaintiff's GAF at 50.  (AR 25-26, 610.)  Dr. Morgan found that

18    Plaintiff was disabled from the time that he initially applied for benefits.  (AR 26; 611.)

19         Plaintiff presented to Dr. Morgan with the chief complaint of a psychotic disorder.  (AR

20    604.)  Plaintiff was accompanied at the examination by his sister who provided elaboration

21    during the examination.  (AR 604.)  Dr. Morgan noted that Plaintiff was reporting that he had

22    been diagnosed with a psychotic disorder and that a clinical note from his primary care physician

23    references schizophrenia and he is under the care of a psychiatrist who is referencing a diagnosis

24    of psychotic disorder not otherwise specified.  (AR 605.)  Plaintiff reported that he is primarily

25    home throughout the course of the day, no longer engages in hobbies, has severe sleep

26    impairment, severe diminution in energy, minimal engagement in domestic activities, and has

27    gained 50 pounds over the course of the year.  (AR 606.)  Plaintiff reported that he has no

28    friends, is not a participant in any group or social organization.  (AR 606.)  Plaintiff reported

hearing voices that tell him to do destructive things or to harm people and denies a history of harming others stating he is able to control his behavior.  (AR 606.)  Plaintiff reports that he has seen people who want to harm him and they are after him in his past and currently.  (AR 606.)

Plaintiff was employed as security guard from the ages of 18 through 29.  (AR 607.)  He was fired from his first position due to a conflict with an ex-girlfriend.  (AR 607.)  He was fired from a second position for allegedly using racial slurs and failing to follow instructions.  (AR 607.)

Plaintiff reported that the television is on during the day, but he does not pay attention; he just stares at it.  (AR 607.)  Plaintiff does not engage in domestic activities as these are done by his sister.  (AR 607.)  Plaintiff takes a bath or shower twice a week.  (AR 607.)  Plaintiff was casually dressed and had not shaved in several days.  (AR 608.)  Grooming and hygiene were poor and eye contact was fair.  (AR 608.)  Plaintiff was calm and cooperative.  (AR 608.)  Plaintiff's speech was soft, but clear with no abnormalities.  (AR 608.)  Mood was severely depressed with a flat, fixed, unchanged affect.  (AR 608.)  Plaintiff's thought processes were coherent, cohesive, organized, logical and goal directed.  (AR 608.)  Plaintiff reported a history of hallucinations, but Dr. Morgan found no evidence of delusions, thought blocking, no ideas of reference, obsessions, phobias, compulsions or depersonalization.  (AR 608.)

Plaintiff was alert, ambulatory, oriented to person, place, time, and situation.  (AR 608.)  Plaintiff was able to correctly identify the month and year.  (AR 608.)  Plaintiff's memory was intact for four digits forward and two digits backwards.  (AR 608.)  Plaintiff was able to recall three of three items immediately and two of three items after five minutes.  (AR 608.)  Remote memory was intact.  (AR 608.)  Plaintiff was able to report a number of the largest cities in the United States and a number of significant items in the news.  (AR 608.)  Dr. Morgan found Plaintiff's calculations, concentration, and abstract thinking impaired.  (AR 609.)  Plaintiff's similarities and differences were satisfactory, and insight and judgment were somewhat impaired as he did not know what he would do were a water pipe to burst in his home, but if he found someone lying on the sidewalk in pain he would call 911.  (AR 609.)

Dr. Morgan conducted a Folstein mini mental status examination with a score of 24/30,

1  suggestive of mild impairment.  (AR 609.)  Dr. Morgan found that a number of aspects of the

2  Personality Assessment Inventory and the MMP12 suggest a person with marked peculiarities in

3  thinking and experience.  (AR 609.)  The results suggest an individual with significant thinking

4  and concentration problems accompanied by marked concerns about physical functioning.  (AR

5  609.)  Plaintiff's self-description suggests marked peculiarities in thinking and experience.  (AR

6  609.)  "These features are often associated with active psychotic episode with poor judgment and

7  impairment in reality testing as hallmark characteristics.  Is likely that this claimant experiences

8  unusual perceptual events or full-blown hallucinations as well as unusual ideas that may include

9  magical thinking or delusional beliefs."  (AR 609.)  Plaintiff may have limited social skills with

10 particular difficulty in interpreting normal nuances of interpersonal behavior.   (AR 609.)

11 Thought processes are likely to be marked by confusion, distractibility and difficulty

12 concentrating, and his thoughts perceived as blocked, withdrawn or somehow influenced by

13 others.  (AR 609.)

14      Plaintiff's results on the MMP12 include suspiciousness and distrust of others, avoiding

15 deep emotional ties, deficient social skills, resents demands placed upon him, thinking is likely

16 to be fragmented, tangential and circumstantial, at time may manifest bizarre thought content

17 with difficulties in concentration, attention and memory problems, and poor judgment.  (AR 609-

18 610.)  Additionally may exhibit severe confusion, delusions of persecution or grandeur, difficulty

19 differentiating between fantasy and reality, and severe long-term problems with feelings of

20 inferiority and insecurity.  (AR 610.)

21      Dr. Morgan diagnosed Plaintiff with psychotic disorder not otherwise specified;

22 borderline intellectual functioning, degenerative disc disease, sleep apnea, carpal tunnel

23 syndrome, mild, tinnitus and scoliosis, with a GAF of 50.  (AR 610.)

24      Dr. Morgan noted Plaintiff was presenting with a psychotic disorder and has been under

25 psychiatric care since 2007 and was hospitalized for a suicide attempt and auditory and visual

26 hallucinations in 2009.  (AR 610.)  Dr. Morgan opined that Plaintiff has severe impairment in

27 social functioning; and marked impairment in ability to maintain activities of daily living,

28 attention and concentration.  (AR 610.)  Dr. Morgan found Plaintiff to have been disabled since

the point that he initially applied for disability benefits.  (AR 611.)  Dr. Morgan completed a Psychiatric Review Technique finding the Plaintiff meets the listing of 12.03 and had marked limitations in restrictions of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace.  (AR 612-614.)

The ALJ gave the opinion of Dr. Morgan little weight as it was contradicted by Dr. Tirunagaru's DMV evaluation that Plaintiff does not suffer from confusion and has no concentration or memory loss, and his medication does not interfere with his ability to drive. (AR 26.)  Dr. Tirunagaru also found that Plaintiff has only mild judgment restrictions, but no depression secondary to dementia and no impaired attention or impulsive behavior.  (AR 26.) Dr. Tirunagaru opines that Plaintiff's overall degree of impairment was mild in contradiction to the opinions of Drs. Kuberski and Morgan.  (AR 26.)  The ALJ found that in light of the evidence cited there were no mental changes in Plaintiff's condition and Chavez applies.  (AR 26.)  Plaintiff contends that the report of Dr. Tirunagaru is not a sufficient reason to reject the specialist opinions.

First, Plaintiff argues that Dr. Morgan is a specialist and Dr. Tirunagaru is Plaintiff's primary care doctor.[4]  For that reason, Plaintiff contends that the opinion of Dr. Morgan should be granted more weight.  The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester, 81 F.3d at 830-831.  In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).  Similar to a treating physician, the opinion of an examining doctor,

---

[4] Defendant argues that Plaintiff rejected the opinion of Dr. Morgan because it was obtained by Plaintiff to support his request for benefits, however, the ALJ merely mentioned that Dr. Morgan examined Plaintiff at the request of his attorney and did not indicate that this was a basis for rejecting the opinion.  Further, in the absence of evidence to undermine the credibility of the medical report, the purpose for which it is obtained is not a legitimate reason for rejecting it.  Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998).  Defendant has introduced no evidence of actual impropriety and the fact that Plaintiff obtained the opinion for the purpose of litigation is not sufficient to reject it. Lester, 81 F.3d at 832.  Once again Defendant argues that the treating psychiatrists' notes indicate that Plaintiff had only moderate impairment, but the ALJ did not cite this as a reason to reject Drs. Morgan or Kuberski's opinion. Finally, Defendant argues that the ALJ found these opinions to be inconsistent with the record, but the ALJ only cited the opinion of Dr. Tirunagaru who did not treat Plaintiff for his mental health issues.  There is no reference in the ALJ's opinion to any of Plaintiff's mental health treatment during the relevant time period.

1   even if contradicted by another doctor, can only be rejected for specific and legitimate reasons

2   that are supported by substantial evidence in the record.  Lester, 81 F.3d at 831 (9th Cir. 1995).

3        In this instance, Dr. Tirunagaru did not treat Plaintiff's mental health conditions and his

4   opinion on the DMV form does not provide substantial evidence to reject the opinion of Dr.

5   Morgan.

6        The ALJ also found that Dr. Morgan was a one-time examiner and less able to evaluate

7   Plaintiff's long-term functional capacity than a treating physician.  (AR 26.)  While Plaintiff

8   argues that this is not a reason to reject Dr. Morgan's opinion, the ALJ is entitled to give less

9   weight to the opinion of the consultative examiner whose conclusions were based on limited

10  observation of the claimant.  Lester 81 F.3d at 832.  While this may be a legitimate reason to

11  reject Dr. Morgan's opinion when reviewing his treating mental health provider's records, Dr.

12  Tirunagaru does not treat Plaintiff's mental health issues.

13       However, the ALJ also noted that Dr. Morgan's assessment did not include any specific

14  work related limitations or medical evidence to support the opined limitations.  (AR 26.)  The

15  ALJ need not accept a physician's opinion that is brief, conclusory, and unsupported by clinical

16  findings.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  While Dr. Morgan's

17  testing suggested that Plaintiff may have psychotic episodes, limited social skills, and thought

18  processes that were marked by confusion, distractibility and difficulty concentrating, he did not

19  find that Plaintiff was exhibiting any of these symptoms at the time of the examination.  (AR

20  608-609.)  Further, Dr. Morgan's opinion that Plaintiff met the listing requirement does not state

21  the basis for this opinion.

22       Dr. Morgan specifically found that Plaintiff's memory was substantially intact.  Plaintiff

23  was able to correctly identify the month and year.  (AR 608.)  Plaintiff's memory was intact for

24  four digits forward and two digits backwards.  (AR 608.)  He could recall three of three items

25  immediately and two of three items after five minutes.  (AR 608.)  Plaintiff's remote memory

26  was intact.  (AR 608.)  Plaintiff's thought processes were coherent, cohesive, organized, logical

27  and goal directed.  (AR 608.)  Plaintiff reported a history of hallucinations, but Dr. Morgan

28  found no evidence of delusions, thought blocking, no ideas of reference, obsessions, phobias,

1   compulsions or depersonalization.  (AR 608.)  Testing indicated mild impairment.  (AR 609.)

2   Despite these relatively normal results and the indication that Plaintiff had mild impairment, Dr.

3   Morgan found that Plaintiff had marked limitations in restrictions of daily living activities,

4   difficulties maintaining social functioning and difficulties in maintaining concentration,

5   persistence, and pace.  The ALJ's finding that Dr. Morgan's opinion was not supported by the

6   medical evidence and does not include any work related limitations are specific and legitimate

7   reasons to give little weight to the opinion of Dr. Morgan that are supported by substantial

8   evidence in the record.

9          Finally, Dr. Morgan opined that Plaintiff had been disabled since he first applied for

10  disability.  Dr. Morgan's opinion does not show that Plaintiff's mental condition had changed for

11  the worse since the prior application for benefits was denied on January 25, 2010.  Dr. Morgan's

12  test results, as discussed above, indicated mild impairment.  Rather than showing that Plaintiff's

13  condition has changed for the worse, Dr. Morgan's examination provides some support for the

14  ALJ's finding that Plaintiff's condition has not worsened since the nondisability finding on

15  January 25, 2010.

16         3.      Agency Psychiatrists

17         Plaintiff argues that the ALJ erred by relying on the opinion of the agency psychiatrist

18  because it was based on a review of an incomplete record.  The agency psychiatrist did not

19  review Plaintiff's treatment records after October 2010.  Upon remand, the Commission shall

20  procure an opinion by the agency psychiatrist which includes a review of the records of

21  Plaintiff's mental health treatment through the date of the decision in this action.

22         4.      Dr. Tirunagaru

23         Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Tirunagaru that

24  Plaintiff was unable to work full-time at any exertional level.  Defendant contends that the ALJ

25  properly considered Dr. Tirunagaru's opinion that Plaintiff has been stable since 2007 in finding

26  that his physical condition had not worsened since January 2010.

27         The ALJ can meet his burden "by setting out a detailed and thorough summary of the

28  facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."

Magallanes, 881 F.2d at 751 (quoting Cotton v. Bowen , 779 F2d 1403, 1408 (9th Cir. 1989)). Here, the ALJ considered a January 2008 cervical spine x-ray which showed mild degenerative changes to the cervical spine.  (AR 22, 458.)  In March 2010, Plaintiff complained of left knee and an x-ray of the left knee was unremarkable.  (AR 22, 444, 465.)

In September 2010, Dr. Vesali examined Plaintiff and diagnosed mild carpal tunnel syndrome, chronic neck pain, and degenerative disc disease of the cervical spine.  (AR 23, 511-514.)  Dr. Vesali noted that Plaintiff had no difficulties getting on and off the examination table or taking off or putting on his shoes and socks; and walks with a normal gait.  (AR 512.) Romberg was negative, and toe and heel walking was normal.  (AR 512.)  Dr. Vesali showed an essentially normal examination and found no limitations (AR 24, 512-514.)

In October 2010, an MRI of the lumbar spine was unremarkable with minimal facet degenerative changes at L4-L5 and L5-S1.  (AR 23, 568.)  In March 2011, an MRI of the cervical spine showed mild degenerative changes, noting that overall the findings are very similar to prior exam.  (AR 23, 598-99.)

In January 2012, Plaintiff complained of knee pain and was to continue medications. (AR 23, 675.)  On examination there was no pedal edema, no ligament laxity and lower extremity strength was grossly intact.  (AR 675.)  On January 25, 2012, Plaintiff was seen by Dr. Clague.  (AR 671-672.)  Dr. Clague found that sensory deficit was present; there was no cranial nerve deficit; Plaintiff exhibited normal muscle tone and coordination; patellar reflexes were 2+ on right and left side; sensation to pinprick was decreased on palmer surface of left hand 3-5 digits and sensation was intact to pinprick on palmar surface of right hand; hand grip was 4/5; and left biceps and triceps tested at 4/5.  (AR 671.)  Plaintiff's strength was good throughout. (AR 671.)  Dr. Clague recommended a cervical collar which helped a little with Plaintiff's neck pain.  (AR 23, 672.)

The ALJ considered these records, along with the opinions of the agency physicians, to find that Plaintiff's physical condition had not changed since the January 29, 2010 decision was issued.  This is substantial evidence to support the ALJ's findings in this regard.

While Plaintiff contends that the ALJ erred by rejecting Dr. Tirunagaru's opinion that

1   Plaintiff could not work at any exertional level, a treating physician's opinion is not necessarily

2   conclusive as to either physical condition or the ultimate issue of disability.  Magallanes, 881

3   F.2d at 751.  The ALJ appropriately considered that opinion of Dr. Tirunagaru was inconsistent

4   with the November 18, 2010 DMV report.  (AR 26; 569-573.)  In this report, Dr. Tirunagaru

5   indicated that Plaintiff's condition was stable (AR 570), and Plaintiff's overall degree of mental

6   impairment was mild (AR 571).   Further the ALJ, considered the February 15, 2011,

7   questionnaire completed by Dr. Tirunagaru indicating that Plaintiff could sit for 4 hours; stand

8   and/or walk for 2 hours; Plaintiff must rest for 30 minutes every hour; and had been disabled to

9   this degree since 2007.  (AR 26, 615.)

10          Finally, the ALJ rejected Dr. Tirunagaru's opinion because it was based partly on

11   Plaintiff's subjective complaints and the ALJ found had that Plaintiff had poor credibility.  (AR

12   26.)   An ALJ can reject a physician's opinion that is premised on a claimant's subjective

13   complaints that have been properly discounted.  Fair v. Bowen, 885 F.2d 597, 605 (1989).  As

14   discussed below, the ALJ properly considered that Dr. Tirunagaru's opinion was based on

15   Plaintiff's subjective complaints.  Substantial evidence supports the ALJ's finding regarding Dr.

16   Tirunagaru's opinion of Plaintiff's physical limitations.

17          5.   April 11, 2012 MRI

18          Plaintiff also argues that the ALJ did not review the results of an MRI conducted on April

19   11, 2012 which shows a change in Plaintiff's spinal condition.  (AR 758.)  This evidence was

20   submitted to the appeals counsel following the ALJ issuing his decision.  In denying Plaintiff's

21   appeal of the June 15, 2012 decision, the appeals counsel stated that it reviewed the records dated

22   July 4, 2012 through July 26, 2013 and this information was about a later time.  However,

23   included within this information is an MRI which was conducted on April 11, 2012.  This MRI

24   was conducted prior to the ALJ issuing his decision.  Upon remand, the ALJ shall address

25   whether this April 11, 2012 MRI shows a worsening of Plaintiff's condition to overcome the

26   presumption of nondisability.

27   **E.     The ALJ's Credibility Findings**

28          Plaintiff contends that the ALJ erred by finding that Plaintiff and his sister were not

credible.  Defendant argues that the ALJ properly considered the credibility of the witness and provided specific reasons to reject their testimony.

### 1. Claimant Credibility

Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors.  Lingenfelter, at 1040; Thomas, 278 F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a

1  prescribed course of treatment. . . .”  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

2  (quoting Smolen, 80 F.3d at 1284).

3        While Plaintiff is correct that the ALJ's observations of a claimant's functioning cannot

4  form the sole basis for discrediting the claimant's testimony, Orn v. Astrue, 495 F.3d 625, 639

5  (9th Cir. 2007), this was not the only specific finding that the ALJ made in finding the Plaintiff

6  exaggerated his symptoms.

7        Initially, the ALJ found that Plaintiff had the listed severe impairments that could be

8  expected to cause some of the alleged symptoms.  (AR 22-23.)  Plaintiff completed a disability

9  report on April 13, 2010.  (AR 230-239.)  The ALJ considered that on March 3, 2011, Plaintiff

10  reported that there were no changes to his condition and no new physical or mental limitations.

11  (AR 23, AR 287.)  Plaintiff's next disability report also stated there were no changes to his

12  condition.  (AR 23, 294.)

13        The ALJ considered that Plaintiff reported on June 30, 2010 that he could only walk for

14  half a block and then must rest for 10 to 20 minutes before resuming walking which was contrary

15  to his own testimony.  (AR 23, 279.)  At the hearing, Plaintiff testified that he was able to walk

16  thirty minutes before resting.  (AR 24, 40.)  The ALJ also noted that although Plaintiff testified at

17  the hearing that he was unable to concentrate for more than two minutes, he paid attention and

18  responded appropriately throughout the thirty minute hearing which further diminished his

19  credibility.  (AR 25.)

20        Further, the ALJ properly considered Plaintiff's contradictory statements regarding the

21  reason the he was no longer working.  (AR 25.)  Plaintiff told Dr. Vesali that he stopped working

22  at a security job in 2007 because he was assaulted and was fired.  (AR 25, 511.)  He told Dr.

23  Morgan that he worked for Table Mountain as a security guard for nine years and was terminated

24  from this position due to conflicts concerning a fiancé who was being harassed by a coworker.

25  (AR 25, 606.)  He also stated that he worked for one year for a private security company and was

26  terminated in October 2007 following an incident where he was accused of using racial slurs and

27  not following instructions.  (AR 25, 606.)  Plaintiff reported in his disability report that he

28  stopped working in October 2007 due to his disability (AR 231), but stated in his disability

applications that his disability began December 1, 2008.   (AR 25, 226.)  While Plaintiff argues that any inconsistencies between his testimony and the record are due to his mental functioning, the medical record reflects that his memory is substantially intact.  (AR 507, 608.)  The ALJ has provided specific reasons to support his finding that Plaintiff exaggerates his symptoms that are supported by substantial evidence in the record.

However, it is unclear from the ALJ's decision if he considered Plaintiff's mental health treatment records after the January 25, 2010 finding of non-disability.   Consideration of Plaintiff's credibility is inescapably linked to conclusions regarding the medical evidence.  20 C.F.R. § 416.929.  As such, the re-evaluation of the medical evidence may impact the ALJ's findings as to Plaintiff's credibility.  Therefore on remand, the ALJ shall consider the mental health treatment notes in assessing Plaintiff's credibility.

2.      Witness Credibility

Plaintiff also contends that the ALJ did not provide legally adequate reasons for rejecting the statement of Plaintiff's sister, Ms. Wagenmen.  "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. § 404.1513(d)(4).  "Lay witness testimony is competent evidence and cannot be disregarded without comment."  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).  The ALJ must give specific reasons germane to the witness in discounting the lay witness testimony.  Stout, 454 F.3d at 1056.  ).  If the ALJ gives reasons for rejecting the claimant's testimony that are equally relevant to similar testimony provided by lay witnesses, that would support a finding that the lay witness testimony is similarly not credible.  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).

The ALJ considered Ms. Wagenmen's report of Plaintiff's activities and that his condition affects certain activities.  (AR 23; AR 252-259.)  The ALJ gave significant weight to Ms. Wagenmen's report of Plaintiff's daily activities, but little weight to the affected area comments because she did not quantify the limitations or explain how the areas were affected other than that Plaintiff could walk one block and then must rest for five to ten minutes.  (AR 23,

AR 257.)

The ALJ found that Ms. Wagenmen's testimony that Plaintiff can only walk for one block is contradicted by Plaintiff's own statements and the medical evidence, as discussed above. Molina, 674 F.3d at 1114.  While Plaintiff argues that this statement is not inconsistent with Plaintiff's statement that he can only walk one half block, it is Plaintiff's testimony at the hearing that he can walk for one half hour that is inconsistent with Ms. Wagenmen's statement.  The ALJ did provide a specific reason germane to the witness to discount her testimony regarding Plaintiff's physical limitations.

Plaintiff focuses on Ms. Wagenmen's statements in the report regarding Plaintiff's mental limitations.  Since the Court is remanding this action for renewed consideration of the medical evidence on Plaintiff's mental health condition and renewed consideration of Plaintiff's credibility, the Court will not conduct an exhaustive analysis of the third party statement completed by Ms. Wagenmen.  Consideration of lay testimony is inescapably linked to conclusions regarding the medical evidence. 20 C.F.R. § 416.929.  Further, reconsideration of Plaintiff's credibility may also impact how the ALJ views the third party statement.  As such, on remand, the ALJ should consider the third-party statement in light of the reconsideration of the medical evidence regarding Plaintiff's mental health and Plaintiff's statements.

**F.     Plaintiff Has Not Provided Evidence that He Meets the Listing Requirement**

Plaintiff argues that his impaired intellectual functioning satisfies the 12.05C listing criteria for mental retardation.  Defendant argues that Plaintiff has not shown that his impairment has changed so that he now satisfies the listing criteria.

Listing 12.05 (Intellectual Disability) "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The required level of severity, as relevant here, is met by "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id.  While Plaintiff argues that his IQ falls within the IQ range, he has consistently been found to have borderline intellectual functioning and this is the finding made in

1   the January 25, 2010 decision finding non-disability.  (AR 68.)   Further, the prior opinion

2   indicated that Plaintiff has a Verbal IQ of 84; Performance IQ of 74; and Full Scale IQ of 77.

3   (AR 70.)   The ALJ found that "the 'paragraph C' criteria of listing 12.05 are not met because

4   [Plaintiff] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a

5   physical or other mental impairment imposing an additional and significant work-related

6   limitation of function.  (AR 22.)

7        Here, the ALJ found that Plaintiff's physical condition had not changed and the Court

8   finds no legal error with this finding.  While the Court finds that the ALJ erred by failing to

9   provide reasons for the finding that Plaintiff's mental condition has not changed, the medical

10  evidence here does not compel a finding that Plaintiff's mental health condition has worsened

11  since the prior decision.  This is an issue that must be resolved by the Commissioner, and not the

12  Court, and the evaluation of Plaintiff's mental condition and the April 2012 MRI results on

13  remand will determine whether Plaintiff meets the listing requirements of IQ and an additional

14  and significant work related limitation of function.

15       **G.    This Action Shall Be Remanded for Further Proceedings**

16       Plaintiff argues that due to the alleged errors made by the ALJ the Court should remand

17  for payment of benefits.

18       The ordinary remand rule provides that when "the record before the agency does not

19  support the agency action, ... the agency has not considered all relevant factors, or ... the

20  reviewing court simply cannot evaluate the challenged agency action on the basis of the record

21  before it, the proper course, except in rare circumstances, is to remand to the agency for

22  additional investigation or explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

23  1090, 1099 (9th Cir. 2014).  This applies equally in Social Security cases.  Treichler, 775 F.3d at

24  1099.  Under the Social Security Act "courts are empowered to affirm, modify, or reverse a

25  decision by the Commissioner '*with or without* remanding the cause for a rehearing.' "  Garrison

26  v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (emphasis in original) (quoting 42 U.S.C. §

27  405(g)).  The decision to remand for benefits is discretionary.  Treichler, 775 F.3d at 1100.  In

28  Social Security cases, courts generally remand with instructions to calculate and award benefits

1  when it is clear from the record that the claimant is entitled to benefits.  Garrison, 759 F.3d at

2  1019.

3         The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which

4  must be satisfied in order for a court to remand to an ALJ with instructions to calculate and

5  award benefits: (1) the record has been fully developed and further administrative proceedings

6  would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

7  rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

8  discredited evidence were credited as true, the ALJ would be required to find the claimant

9  disabled on remand."  Garrison, 759 F.3d at 1020.  The credit as true doctrine allows "flexibility"

10  which "is properly understood as requiring courts to remand for further proceedings when, even

11  though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a

12  whole creates serious doubt that a claimant is, in fact, disabled.  Id. at 1021.  Even when the

13  circumstances are present to remand for benefits, "[t]he decision whether to remand a case for

14  additional evidence or simply to award benefits is in our discretion."  Treichler. 775 F.3d at 1102

15  (quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

16         In this instance, the ALJ has failed to provide legally sufficient reasons for the decision

17  that Plaintiff's mental health condition has not worsened since the January 25, 2010 nondisability

18  determination.  Similarly, the vast majority of errors identified revolve around the determination

19  of Plaintiff's mental health condition.  Looking at the record as a whole there are significant

20  conflicts between the medical opinions, and Plaintiff and the third party witness testimony.

21  Since there has been a previous finding of nondisability, Plaintiff must present evidence to show

22  that his condition has worsened.  However, review of the treating physician's record show that

23  Plaintiff's GAF has gone from 50 to 59 and he has shown improvement on medication during the

24  relevant time period.  (AR 538, 540, 542, 546, 545, 626-27, 628, 630-31, 632-33, 635, 637, 639,

25  640, 642, 644, 646, 648, 687, 690, 692, 694, 771-72.)  Further, treatment records reflect that

26  Plaintiff's mental condition is stable.  (AR 626, 628, 630, 632, 634, 638, 640, 644, 646, 690, 692,

27  694, 772.)

28         Further, there is no medical evidence interpreting the results of the April 11, 2012 MRI of

1  Plaintiff's cervical spine.  Remand is appropriate for the ALJ to seek an opinion on the effect of
2  this evidence upon the decision whether Plaintiff's condition had worsened prior to June 15,
3  2012.

4  　　　　Based upon the record, the Court cannot determine that the Commissioner would be
5  required to award benefits in this instance.  It is not clear from the record that Plaintiff's mental
6  condition has worsened to overcome the presumption of nondisability and no physician has
7  addressed the April, 2012 MRI of Plaintiff's cervical spine.  The Court finds that there is an
8  outstanding issue that needs to be resolved by the Commissioner; and this action shall be
9  remanded for further proceedings consistent with this opinion.

10  　　　　　　　　　　　　　　　　　**V.**

11  　　　　　　　　　　**CONCLUSION AND ORDER**

12  　　　　Based on the foregoing, the Court finds that the ALJ erred by not providing reasons for
13  the finding that Plaintiff's mental health condition had not worsened to overcome the
14  presumption of nondisability.  Further, upon remand, the Commissioner shall consider the April
15  11, 2012 MRI of Plaintiff's cervical spine.

16  　　　　Accordingly, IT IS HEREBY ORDERED that:

17  　　　　1.　　　Plaintiff's appeal from the decision of the Commissioner of Social Security is
18  　　　　　　　　GRANTED IN PART AND DENIED IN PART;

19  　　　　2.　　　The Court REMANDS this action back to the Commissioner for further
20  　　　　　　　　administrative proceedings consistent with this opinion; and

21  　　　　3.　　　The Clerk of the Court is directed to CLOSE this action.

22
23  IT IS SO ORDERED.

24  Dated:   **April 20, 2015**

　　　　　　　　　　　　　　　　　_____
25  　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

26

27

28